**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| YVONNE WALKER, | : | |
| Petitioner, | : | Civ. No. 19-13983 (KM) |
| v. | : | **OPINION** |
| SARAH DAVIS, et al., | : | |
| Respondents. | : | |

**KEVIN MCNULTY, U.S.D.J.**

## I.  INTRODUCTION

Pro se petitioner Yvonne Walker, a state prisoner at Edna Mahan Correctional Facility in Clinton, New Jersey, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. DE 4. Walker challenges her conviction for first-degree murder and related theft and weapons offenses. For the reasons below, the petition is denied and a certificate of appealability shall not issue.

## II.  BACKGROUND

### A.  Factual Background[1] and Procedural History

On direct appeal, the Appellate Division summarized the evidence underlying Walker's conviction as follows:

> Cassetta Blunt lived on the first floor of a two-family home in Irvington, which she owned. She rented the second-floor apartment to a mother and her daughter (neighbors). On the morning of June 15, 2011, Blunt's neighbors left their home to go for a walk in a nearby park. As they were leaving, they saw Blunt at her front door watching a Verizon service technician on a nearby telephone pole. Blunt's phone was not working, and the technician was attempting to address the problem. The neighbors spoke briefly with Blunt as they left the home.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), this Court affords deference to the factual determinations of the State court.

Earlier that morning, the technician had entered Blunt's apartment and placed a device called a toner on her telephone jack. He spoke with Blunt for approximately ten to twenty minutes before going outside to climb the pole. He worked on four or five telephone poles in the vicinity of defendant's home that morning.

While working on one of the poles, the technician was approached by a person he later identified as defendant. Defendant asked him if he was going to be finished soon. Shortly thereafter, the technician saw defendant speaking with Blunt at the front door of Blunt's residence.

The technician finished his work on the telephone poles around 11:00 a.m. and attempted to contact Blunt. Blunt had told him that she was going to leave the door open for him to enter the house when he finished, but when he tried to open the door, it was locked. He returned to his service vehicle and waited for Blunt. While he was waiting in the vehicle, defendant approached him and asked if he had seen Blunt. He responded no.

When the neighbors returned from the park around noon, the technician asked for their help in re-entering Blunt's apartment to retrieve his tools. The neighbors rang Blunt's doorbell and knocked on her door but there was no response. They thought Blunt had gone to pay her taxes and left a note on her door.

The technician went to another job. He returned between 2:00 and 3:00 p.m. and knocked on Blunt's door but there was no response. He returned a third time around 7:00 p.m., but was again unsuccessful in reaching Blunt.

The neighbors left their apartment around 1:00 p.m. for a trip to Atlantic City. They noticed a Meals on Wheels food delivery bag on Blunt's door. When they returned around midnight, the bag was still there and the lights were on inside Blunt's apartment.

Fearing something was wrong, they entered Blunt's home through the back door. After finding Blunt's emptied purse on the floor, they found Blunt's body "laying on her back" with "books and things [covering] her face" and a "knife all the way inside [of] her chest."

After speaking with the neighbors, Essex County investigators obtained a search warrant for defendant's house. During the search, investigators uncovered jewelry and other items belonging to Blunt. Defendant was transported to the Essex County Prosecutor's Office where she waived her *Miranda* rights and gave a recorded statement.

Defendant explained that she had known Blunt for many years, and started working for her within the past year. The work varied but included mowing the lawn and shoveling snow. Defendant went to Blunt's apartment between 7:00 and 9:00 a.m. on June 15, 2011 because Blunt owed defendant $40. They argued and defendant claimed Blunt grabbed a cane and hit her in the lip with it. Defendant

2

claimed she "just snapped" and "blacked out" but recalled grabbing an eight-inch-black-handled knife and stabbing Blunt in the chest. Defendant then placed a pillow over Blunt's face because she did not want to look at Blunt while hurting her. After stabbing Blunt, defendant left through the back door, went over the back fence, and went home. Defendant identified items that she had taken from Blunt's house after stabbing her, including several pieces of jewelry.

Dr. Mirfrida Geller, the medical examiner who performed the autopsy of Blunt's body, testified that Blunt was stabbed eleven times. When Blunt was brought in, the eight-inch knife was still embedded in Blunt's chest. The knife perforated Blunt's right lung and entered her heart through the ascending aorta.

Dr. Geller described several other injuries, including two broken ribs, abrasions around the neck and ears, multiple mandibular fractures, consistent with repeated blunt trauma to the face, and multiple wounds in or around the hands and fingers, consistent with defensive wounds.

Despite these extensive injuries, Dr. Geller opined that Blunt likely did not die instantly but continued to live for a few minutes after the attack.

*State v. Walker*, No. A-5613-12T2, 2014 WL 7912870, at *1–3 (N.J. Super. Ct. App. Div. Feb. 25, 2015).

In January 2012, Walker was indicted for first-degree felony murder; first-degree murder; first-degree robbery; fourth-degree unlawful possession of a weapon, a knife; and third-degree possession of a weapon for an unlawful purpose. *State v. Walker*, No. A-0338-16T3, 2018 WL 3431709, at *1 (N.J. Super. Ct. App. Div. July 17, 2018). On collateral appeal, the Appellate Division summarized relevant portions of Walker's criminal proceedings as follows:

On January 22, 2013, the trial court conducted a Miranda hearing but denied defendant's motion to suppress the statement she gave to police. Defendant was present for the suppression hearing, but she asked to leave because she was upset. During direct examination of the first witness, defense counsel asked for a sidebar and stated, "I'm going to ask that [defendant] be allowed to go in the hallway because she's told me . . . she's going to have an outburst. It's going to be an issue at trial . . . . I think she has a right not to be present, so I'm going to suggest that the Court allow her to exercise that right." The judge spoke with defendant: "you have a right not to be present. I understand from your attorney . . . you wish not to be present . . . during the hearing." Defendant said yes and was escorted out.

A jury trial was conducted between January 29 and February 6, 2013. Defendant was present for jury selection, and one of the voir dire questions was whether

3

prospective jurors would be prejudiced against defendant because of her absence from the trial. Further, during trial counsel's opening statement, she addressed the issue directly with the jury, asking them not hold defendant's absence against her.

During trial, defendant was rarely present. On the first day of trial, after the jury was sworn, but before they were instructed, defense counsel requested a break so her client could exercise her right not to be in court for the openings. After the jury instructions, counsel represented to the court, "[defendant] was present for jury selection, . . . but as she did at the time of the Miranda [h]earing she has indicated to me that . . . she chooses not to be present at this time."

Defendant was absent the second day of trial. The transcript is silent about whether defendant had affirmatively renewed her decision not to appear. On the third day of trial, defendant was present when court convened. The trial judge addressed her, asking, "you're back here again . . . . We're ready to continue with the trial. Uh, do you wish you be here . . . during the course of the trial, or not?" Defendant said no, and left the courtroom.

The defendant was not present for final jury instructions, and the record is silent about whether defendant renewed her decision not to appear. The judge informed the jury:

> As you know, the defendant elected not to testify at trial. It is her [c]onstitutional [r]ight to remain silent. You must not consider for any purpose or in any manner in arriving at your verdict the fact that the defendant did not testify. That fact should not enter your deliberations or discussion in any manner, at any time. Uh, and the same goes . . . for the times she was not present . . . defendant is . . . . presumed innocent whether or not she chooses to testify.

On February 6, 2013, the lawyers appeared before the judge to address an issue about a juror. Defendant was not present at this hearing, evidenced by the following colloquy:

> Court: . . . Is she here?
>
> Counsel: I don't believe so, Judge.
>
> Court: You . . . want . . . to talk about the juror without her present?
>
> Counsel: That's fine, Judge.

However, later that day, when the jury presented the court with a question, defendant was present.

Defendant was convicted of first-degree murder, theft of movable property, unlawful possession of a weapon, and possession of a weapon for an unlawful

purpose. She was acquitted of robbery and felony murder. The record does not indicate whether defendant was present for the verdict.

On March 27, 2013, the trial judge merged the weapons possession charges with the murder charge, and sentenced defendant to forty-five years in prison, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, for the murder conviction, and to five years for the theft charge, to run concurrently. He found no mitigating factors, and found aggravating factors one, three, six, nine, and twelve; the aggravating factors preponderated the mitigating factors. After her release, she will be subject to mandatory parole supervision for five years.

*Walker*, 2018 WL 3431709, at *1–2.

Walker appealed, asserting she was deprived of her right to due process and a fair trial because the court failed to dismiss a deliberating juror for financial hardship and failed to properly charge the jury on her absence during trial. *Id.* at *2. In February 2015, the Appellate Division affirmed the conviction and sentence for the murder charge, but reversed the conviction for theft, changing it to a disorderly persons theft offense, and remanded for resentencing. *Id.* Certification was denied in June 2015. *State v. Walker*, 222 N.J. 15 (2015).

Walker petitioned for post-conviction relief ("PCR") in August 2015. *Walker*, 2018 WL 3431709, at *2. In January 2016, her PCR counsel filed an amended petition, asserting Walker's trial counsel had been ineffective because she (1) failed to communicate with Walker and review discovery with her; (2) advised Walker not to attend trial and did not advise her of the dangers of not attending; (3) failed to request the model jury charge regarding her absence from trial; and (4) failed to object to jury instructions not including the model charge. *Id.* The PCR judge granted Walker's request for an evidentiary hearing, limited to two issues: (1) the waiver of Walker's appearance at trial, and (2) trial counsel's pre-trial communication with Walker. *Id.*

The Appellate Division summarized Walker and her trial counsel's testimony from the PCR hearing as follows:

During the hearing, defendant testified that over the entire time trial counsel had represented her, beginning after her indictment, counsel visited defendant "just

three or four times," staying only "[twenty] minutes or less." Defendant alleged counsel never went through discovery with her, and counsel watched portions of her videotaped statement with her, but defendant did not want to see all of the video because it upset her.

When she asked counsel if she had to be present at her trial, counsel told her she did not have to be present at the trial, saying "it's also in your best interest if you're not at your trial because of [the] anger issue. She . . . didn't want no outbursts from me." Counsel did not explain to defendant how it might hurt her case if she were not present or that the jury might misperceive her absence. Defendant did not recall being present for her Miranda hearing, nor asking if she could not be present while her statement was played. Further, defendant did not recall being asked by the court whether she wanted to be present for summations. She also did not remember if she was present for the jury instructions.

Defendant's public defender testified after being assigned to represent defendant, she visited the jail often to speak with defendant, and the length of her visits would "depend on what [they] were talking about." She and defendant had numerous discussions about how to proceed with her defense, and whether defendant would be able to contain herself when hearing the evidence against her.

Counsel expressed concern "there was going to be some type of explosion in front of the jury and we had many discussions about that." She "suggested to [defendant] that . . . if she didn't think she could contain herself, if she didn't think she could not have an outburst upon hearing different witnesses make allegations against her, that perhaps it would be in her best interest not to be present during the testimony." These conversations happened more than once, and were "ongoing because the trial was ongoing." Ultimately, defendant made the decision not to be present at trial.

When she was not in the courtroom during the trial, defendant stayed in the holding cell at the courthouse, and was present during jury selection so the jury would "know that she was not a fugitive." Counsel "went into the holding cell to speak to [defendant] on every break, at lunchtime, morning break, afternoon break . . . [and] tried to . . . keep her informed to make her feel that she knew what was going on despite the fact that she wasn't in the courtroom."

Counsel requested a jury instruction to educate the jurors about defendant's right to not have her absence held against her. The instruction given was "not exactly what [she] requested," however, the jury was told they were not to hold defendant's absence against her.

*Walker*, 2018 WL 3431709, at *2–3.

In June 2016, the PCR court denied Walker's PCR petition, finding that Walker's counsel had rendered ineffective assistance, but that Walker failed to demonstrate prejudice. *Id.* at *3. The Appellate Division summarized the PCR court's decision as follows:

> The judge found credible trial counsel's testimony that her meetings with defendant were longer than twenty minutes, and that she had concerns over defendant's potential for negative and damaging reactions to testimony. However, it was not apparent counsel informed defendant of the risks of not being present at trial, and the record did not support a finding that defendant made a knowing and intelligent waiver of her right to be present at trial. Defendant was asked only twice about her desire not to be present, and the PCR judge found the trial court did not meet its obligation "to question defendants about their understanding of the nature and consequences of their absence from the trial."
>
> Ultimately, the PCR judge found although trial counsel's incomplete advice regarding defendant's absence from trial rendered her assistance ineffective, defendant did not satisfy the second prong of the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Defendant had demonstrated trial counsel was ineffective, but she did not demonstrate a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different, because of the strong evidence against her. *State v. Fritz*, 105 N.J. 42, 52 (1987) (quoting *Strickland*, 466 U.S. at 694).

*Walker*, 2018 WL 3431709, at *3. The PCR court also rejected Walker's arguments regarding the model jury charge, noting that the arguments had been addressed and found to be without merit on direct appeal. *Id.* at 4.

Walker appealed, arguing that the PCR court erred in denying her petition because trial counsel had been ineffective. DE 8-18. She argued that (1) she was prejudiced by trial counsel's waiver of her court appearances, and (2) trial counsel was ineffective because she (a) failed to communicate with Walker, which denied her the opportunity to participate in her defense, and (b) failed to request the above-referenced model jury instruction. *Id.* In July 2018, the Appellate Division affirmed. *Walker*, 2018 WL 3431709, at *6.

Walker file a pro se petition for certification in August 2018 (DE 8-36), presenting the following question: "Did the defendant receive constitutionally ineffective assistance from trial

counsel because of counsel's failure to fully explain the ramifications of waiving appearance at trial, thus meaning that defendant did not make a knowing and intelligent waiver of her right to appear?" *Id.* at 5. In her brief, Walker argued that "[i]rrespective of the claim of ineffective assistance of counsel, the trial court's duty to make its own determination as to the knowing and voluntary waiver of the important right to attend trial was not fulfilled in this case and this violated petitioner's rights under the New Jersey and U.S. Constitutions to due process and a fair trial." *Id.* at 12. In March 2019, the Supreme Court of New Jersey denied certification without a merits discussion. *State v. Walker*, 237 N.J. 209 (2019).

### B.  The Habeas Petition

Walker filed an initial habeas petition in June 2019, raising two grounds. As her first ground, Walker asserted that "Petitioner's right under the U.S. Constitution to be present at trial and confront her accusers under the Sixth Amendment . . . was violated because her waiver of her right to be present at trial was not knowing and intelligent." DE 1 at 5. Walker represented that "this claim was fully exhausted in the State courts." *Id.* As her second ground, Walker asserted that "Petitioner's trial counsel provided constitutionally ineffective assistance, violating petitioner's right to effective assistance of counsel under the Sixth Amendment . . . , by failing to adequately consult with petitioner and advise her to attend trial, and by advising her to voluntarily waive her right to appear at trial and confront the witnesses against her." *Id.* at 7.

In January 2020, I issued a memorandum order advising Walker that, despite her assertion to the contrary, it did not appear that she had exhausted ground one—the waiver claim. DE 3 at 2. I directed Walker, if the waiver claim was not exhausted, to choose one of the following options: (1) request a stay pending exhaustion, (2) withdraw the unexhausted claim and proceed on the exhausted claim, or (3) consent to dismissal of the petition without prejudice

as a "mixed petition"—that is, a petition containing both exhausted and unexhausted claims. *Id.* at 4. In February 2020, Walker filed an amended petition, asserting identical grounds for relief (using slightly different wording) (DE 4 at 6–8), along with a brief arguing that the waiver claim was exhausted because "the body of the legal argument in the State Supreme Court filing mentions both ineffective assistance of counsel at trial and a due process argument 'under the State and Federal Constitutions'" and "Petitioner cited both New Jersey and U.S. Supreme Court cases in her legal argument" (DE 4-1 at 4).

In February 2022, I found that Walker "sufficiently asserted exhaustion at this juncture," and ordered the State to answer. The State responded in March 2022, arguing that: the waiver claim was nevertheless not exhausted (DE 8 at 28–35, 41–44); the ineffective assistance of counsel claim is without merit (*id.* at 28–39); and the petition must be dismissed as a mixed petition. Walker did not reply. This matter is therefore fully submitted and ready for decision. For the reasons below, the petition is denied and a certificate of appealability shall not issue.

## III.   LEGAL STANDARD

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas petitioner must establish entitlement to relief for each claim in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *Parker v. Matthews*, 567 U.S. 37, 40–41 (2012). District courts must be "highly deferential" to

the determinations of state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 773 (2010).

If the state courts have adjudicated a claim on the merits, the district court shall not grant a writ of habeas corpus unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Federal law is "clearly established" for these purposes if it is clearly expressed in "the holdings, as opposed to the dicta" of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id*. If a petitioner challenges an allegedly erroneous state court factual determination, that determination "shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The relevant state court decision for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008). These standards apply "even where there has been a summary denial" by the state court. *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011).

**B. Exhaustion**

A federal court may not grant a writ under § 2254 unless the petitioner has first "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *see also Rose v. Lundy*, 455 U.S. 509, 515 (1982); *Henderson v. Frank*, 155 F.3d 159, 164 (3d Cir. 1998);

*Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). The petitioner must afford the state courts "the opportunity to resolve the federal constitutional issues before he goes to the federal court for habeas relief." *Id.* (quoting *Zicarelli v. Gray*, 543 F.2d 466, 472 (3d Cir. 1976)). Exhaustion also permits development of a complete factual record in state court, which aids federal court review. *See Lundy*, 455 U.S. at 519.

  To exhaust, a petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). "Fair presentation means that a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010) (citations and internal quotation marks omitted). "[T]he claims heard by the state courts must be the 'substantial equivalent' of claims asserted in the federal habeas petition. Reliance on the same constitutional provision is not sufficient; the legal theory and factual basis must also be the same." *Massey v. Warren*, No. CV 13-3439, 2018 WL 6649723, at *3–5 (D.N.J. Dec. 19, 2018) (citing *Picard v. Connor*, 404 U.S. 270 275, 277 (1971)); *see also McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) ("It is not sufficient that a 'somewhat similar state-law claim was made.'") (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).

  "The exhaustion doctrine therefore requires a petitioner challenging a New Jersey conviction under § 2254 to have fairly presented each federal ground that is raised in the petition to all three levels of the New Jersey courts—that is, the Law Division, the Appellate Division, and the New Jersey Supreme Court." *Prall v. Att'y Gen. of the State of N.J.*, No. 3:18-CV-2614, 2021 WL 733685, at *5 (D.N.J. Feb. 25, 2021) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838

(1999); *Lundy*, 455 U.S. at 509). "The burden is on the habeas petitioner to prove exhaustion." *DeFoy v. McCullough*, 393 F.3d 439, 442 (3d Cir. 2005).

Generally, district courts should dismiss petitions containing unexhausted claims in the absence of a state court decision clearly precluding further relief, even if it is not likely that a state court will consider the claims on the merits. *See Lundy*, 455 U.S. at 522; *Banks v. Horn*, 126 F.3d 206, 212–14 (3d Cir. 1997); *see also Toulson v. Beyer*, 987 F.2d 984, 989 (3d Cir. 1993) ("Because no [New Jersey] court has concluded that petitioner is procedurally barred from raising his unexhausted claims and state law does not clearly require a finding of default, we hold that the district court should have dismissed the petition without prejudice for failure to exhaust state remedies.").

### C. Procedural Default

"The procedural default doctrine is an important corollary to the exhaustion requirement." *Fowlkes v. Att'y Gen. of N.J.*, No. CV 21-7734, 2021 WL 4129489, at *2–3 (D.N.J. Sept. 10, 2021); *see also Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). This doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991). The procedural default doctrine also applies to bar federal habeas claims when a prisoner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1; *Caswell v. Ryan*, 953 F.2d 853, 861 (3d Cir. 1992); *see O'Sullivan*, 526 U.S. at 838 (failure to invoke one complete round of a state's established appellate review process resulted in a procedural default). To overcome a procedural default of federal claims in state court, a prisoner must demonstrate "cause for the

default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

### D.  Merits Review

When a petitioner's constitutional claims are unexhausted or procedurally defaulted, a court can nevertheless bypass those threshold issues and deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Carrascosa v. McGuire*, 520 F.3d 249, 254–55 (3d Cir. 2008) ("Section 2254(b)(2) provides that '[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.' The District Court was thus well within its discretion to deny Carrascosa's unexhausted claim on the merits") (quoting 28 U.S.C. § 2254(b)(2)); *Taylor v. Horn,* 504 F.3d 416, 427 (3d Cir. 2007) ("[B]ecause we will deny all . . . claims on the merits, we need not address exhaustion."); *Bronshtein v. Horn,* 404 F.3d 700, 728 (3d Cir. 2005) ("[W]e may reject claims on the merits even though they were not properly exhausted, and we take that approach here."); *Lambert v. Blackwell,* 387 F.3d 210, 260 n. 42 (3d Cir. 2004) (addressing an unexhausted claim "because it is meritless and we can therefore dismiss it under 28 U.S.C. § 2254(b)(2)") (citation omitted).

Where the state courts have not "reached the merits of a claim thereafter presented to a federal habeas court," however, the federal court must "conduct a de novo review over pure legal questions and mixed questions of law and facts . . . ." *Taylor v. Horn*, 504 F.3d 416, 429 (3d Cir. 2007). Even on de novo review, the state court's factual determinations are still presumed to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001) (citing 28 U.S.C. § 2254(e)(1)).

13

## IV.  DISCUSSION

### A.  Ineffective Assistance of Counsel

#### 1.  Applicable Law

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI; *see Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim of ineffective assistance has two necessary components. *Id*. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness," *id.* at 687–88, meaning he "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. Second, a petitioner must establish prejudice, i.e., a reasonable probability that the result of the trial would have been different absent the deficient act or omission. *Id.* at 687. Further, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

On habeas review, it is not enough that a federal judge would have found counsel ineffective. The judge must find that the state court's resolution of the issue (assuming it did resolve the issue) was unreasonable, a higher standard. Indeed, review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas." *Harrington v. Richter*, 562 U.S. 86, 101 (2011); *see also Yarborough v. Gentry,* 540 U.S. 1, 6 (2003).

#### 2.  Analysis

Walker argues that her trial counsel provided constitutionally ineffective assistance because "counsel failed to adequately consult with [her] and advise her to attend trial and by advising her to voluntarily waive her right to attend trial and confront the witnesses against her." DE 4 at 8. I find that Walker has exhausted these claims by fairly presenting her arguments to the

14

state courts on collateral review. Thus, I review these claims in accordance with the standards described in Section III.A. (AEDPA) and IV.A.1. (*Strickland*).

### a.      Insufficient Communication

Walker has not demonstrated that she is entitled to relief on her claim that counsel was ineffective for failing to adequately consult with her. The transcript of the PCR hearing reveals that counsel had many discussions with Walker about discovery, trial strategy, and Walker's "anger issues."[2] The PCR judge—noting that counsel "had been an Assistant Deputy Public Defender for twenty years by the time she represented Petitioner in this case" and "[s]he is now a First Assistant Deputy Public Defender who serves in a supervisory capacity" (DE 8-15 at 12) — found credible counsel's "testimony that her meetings with Petitioner did last longer than twenty minutes on occasions when they were reviewing discovery, such as Petitioner's statement" (DE 8-15 at 8). The court also found credible counsel's "testimony regarding the concerns she

---

[2] Among other things, the transcript reveals that counsel: spoke with Walker about her videotaped confession and trial strategy in light of that confession (DE 8-35 at 46); had "numerous discussions" with Walker "about how best to proceed," "the fact that it wasn't easy for her to listen to either her statement or wasn't easy for us to go through the discovery and read and discuss statements of some of the alleged witnesses," "the fact that Ms. Walker had trouble containing herself when these things would be presented to her," counsel's concerns that Walker may not be able to "contain herself" "upon hearing different witnesses had testified, what they testified to, how I thought things were going, what was going to happen next" (*id.* at 50-52); during the trial, spoke with Walker in the holding cell at the morning break, lunchtime, afternoon break, and end of the day "about what had transpired while she was in the cell, what witnesses had testified, what they testified to, how I thought things were going, what was going to happen next" (*id.* at 55, 61); discussed with Walker whether she would testify at trial (*id.* at 58–59); consulted with Walker at the jail regarding witness statements (*id.* at 59–60); had "many discussions" with Walker "about her not coming out" (*id.* at 63 ("[T]he overriding point of her not being there was her anger issue. And I most certainly expressed to her my opinion, which was if she could not tell me that she wasn't going to explode in front of the jury, it was my opinion, as her attorney, that she shouldn't be there, because, despite all of the reasons for someone being there . . . , in my opinion, I thought her exploding before the jury in a case where she was essentially accused of exploding on a woman, would be really bad."); and "on a number of occasions, had fairly lengthy discussions with Ms. Walker about the fact that it would be better for her to be in court and to sit with me and to listen to the testimony if she were going to not explode in front of the jury, but that if she agreed with me that there was a likelihood that she could have an outburst, that would do so much damage to our defense that any benefit that could have been derived from her sitting there would have been washed away" (*id.* at 68).

expressed to Petitioner over Petitioner's potential reactions to testimony presented at trial." *Id*. The Appellate Division affirmed the PCR court's rejection of this claim, finding that the PCR judge's determination that "trial counsel was a credible witness[] and she adequately communicated with Walker" was entitled to deference. *Walker*, 2018 WL 3431709, at *5.

In light of the PCR court's credibility finding and the evidence in the record that counsel communicated with Walker on numerous occasions, the Appellate Division reasonably found that counsel's communication with Walker was not inadequate. Thus, Walker has failed to establish that the state courts' rejection of this claim is contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts in light of the evidence presented.

Even assuming counsel's performance was deficient, however, Walker is not entitled to relief because she has not established prejudice. First, Walker does not specify how additional communication with counsel would have changed the outcome. For example, she does not articulate the issues she would have discussed; she does not propose an alternative, superior defense strategy; she does not identify previously unknown witnesses or evidence that would support her passion/provocation defense. In short, she does not provide information that would have been helpful to her defense that she was unable to share with counsel as a result of the alleged lack of adequate communication. *See Bryant v. DeBalso*, No. 18-5017, 2019 WL 13160827, at *6 (E.D. Pa. June 26, 2019) ("Bryant has failed to identify any specific factual information that he could have provided to his counsel that might have affected the outcome of his trial; thus, he falls short in showing that any alleged inadequacy in counsel's communications with him prejudiced his defense in any way."), *report and recommendation adopted*, 2019 WL 4805219 (E.D. Pa. Sept. 30, 2019); *Hill v. Link*, No. 15-355, 2017 WL 7107456, at *7 (E.D. Pa.

June 28, 2017) ("Hill has failed to identify any factual information that he could have provided to his counsel that might have affected the outcome of his trial, to show that any favorable witnesses or other exculpatory evidence existed about which he could have informed his counsel or to claim that he could have in any way provided counsel with a basis on which to mount a more effective defense. Thus, he falls short in showing that any alleged inadequacy in counsel's communications with him prejudiced his defense[.]"), *report and recommendation adopted*, 2018 WL 580638 (E.D. Pa. Jan. 26, 2018); *Ellington v. Overmyer*, No. 14-19, 2017 WL 4800473, at *10 (M.D. Pa. Oct. 3, 2017) (no finding of prejudice where "Ellington . . . has not asserted how having more discussions with LaBar would have changed the outcome of either his suppression motion or later trial"), *report and recommendation adopted*, 2017 WL 4790280 (M.D. Pa. Oct. 24, 2017); *Marrero v. Lamas*, No. 11-6707, 2012 WL 2938438, at *14 (E.D. Pa. June 25, 2012) (no finding of prejudice where "petitioner has failed to reference particular information that would have been germane to his defense that he was unable to convey to counsel because of the lack of in-person meetings"), *report and recommendation adopted*, 2012 WL 2941528 (E.D. Pa. July 19, 2012); *see also United States v. Nguyen*, 379 F. App'x 177, 180 (3d Cir. 2010) ("While this Court is certainly not aware of any constitutionally required minimum number of face-to-face visits a counsel must arrange in order to provide effective representation, Nguyen's claim fails because he has provided no credible theory or evidence as to how more consultations with his attorney would have led to a different outcome.").

Second, the state courts reasonably found that Walker did not establish prejudice because counsel's performance resulted in Walker's acquittal of felony murder and robbery charges. *See* DE 8-15 at 12 ("While the Court cannot gauge the number of visits [counsel] made of petitioner in this case, the success of trial counsel's strategy is evidenced by the fact that Petitioner was

ultimately acquitted on the first degree felony murder count and on the first degree robbery count. Petitioner has failed to satisfy the *Strickland/Fritz/Cronic* standard."); *Walker*, 2018 WL 3431709, at *5 ("We note the strategy employed by trial counsel was at least partially successful, as defendant was acquitted of robbery and felony murder."); *see also Scott*, 2010 WL 8128749, at *16 ("Trial counsel emphasized Scott was not seen or found with a weapon. Scott was not convicted of a weapon charge, attempted murder, or murder. Such evidence supports the reasonableness of the state courts['] application of *Strickland*.") (citations omitted).

Third, there was strong evidence of Walker's guilt, including her confession, witness testimony, DNA evidence, and the victim's personal belongings found in Walker's home. *Walker*, 2018 WL 3431709, at *5; DE 8-15 at 15; *see also Albrecht v. Horn*, 485 F.3d 103, 129 (3d Cir. 2007) ("The ample if not overwhelming evidence of Albrecht's guilt . . . supports the conclusion that he suffered no prejudice as a result of counsel's deficient performance . . . ."); *Morales v. Clark*, No. 19-4971, 2021 WL 7278923, at *10 (E.D. Pa. Nov. 15, 2021) ("The strength of the prosecution's case is relevant to determining whether Petitioner was prejudiced by counsel's omission. Given these review principles and the strong evidence of guilt presented at trial, it is impossible to find that the state court unreasonably applied *Strickland*'s prejudice standard."), *report and recommendation adopted*, 2022 WL 622742 (E.D. Pa. Mar. 2, 2022); *Cho Lee Lin v. Bartkowski*, No. 10-5502, 2012 WL 3201943, at *35 (D.N.J. Aug. 1, 2012) ("Given the overwhelming evidence of guilt, this Court finds that the New Jersey courts' rejection of Petitioner's ineffective assistance claims for failure to show prejudice was not contrary to, or an unreasonable application of *Strickland* and its progeny.")

On this record, the Appellate Division's determination that Walker was not prejudiced by counsel's alleged inadequate consultations with her is not contrary to, or an unreasonable

application of, clearly established federal law, or an unreasonable determination of the facts in light of the evidence presented. Walker is not entitled to habeas relief on this claim.

### b.      Ineffective Assistance as to Presence at Trial

I also find that Walker is not entitled to relief on her claim that counsel was ineffective for advising her to "voluntarily waive her right to attend trial and confront the witnesses against her." DE 4 at 8. The PCR court set forth the following facts relevant to its analysis of this claim:

> Petitioner was not present during any testimonial portions of the trial, nor for openings or summations. During the *Miranda* hearing immediately preceding trial, [counsel] indicated to the court that her client wished to not be present at that time. [Counsel] had been told by Petitioner that she was going to have outbursts during the upcoming testimony. Judge Vasquez informed Petitioner that she had a right not to be present and Petitioner confirmed that she did not want to be there. During jury selection, one of the voir dire questions highlighted the fact that a defendant in a criminal trial has a right not to be present. [Counsel] once again indicated to the court right before opening statements were delivered that her client wished not to be present, just like at the *Miranda* hearing. During her opening statement, [counsel] addressed this issue with the jury, asking the jurors to keep an open mind and to not hold it against Petitioner that "she's not able to be here" during the trial. Judge Vasquez made inquiry of Petitioner once again two days later, asking her if she wished to be present during her trial. Petitioner stated that she did not.

> At the evidentiary hearing, Petitioner testified that she asked [counsel] if she had to be at trial. Petitioner admitted that she would get very angry when hearing other people say bad things about her. She testified that her counsel told her it would be in her best interest to not be present so there would be no risk of an outburst occurring. However, Petitioner said she was never told that it would actually help her case to be present at trial, as opposed to being absent. [Counsel] testified at the hearing that after multiple discussions with her client about how to proceed with the trial, she suggested to Petitioner that in her personal opinion as Petitioner's attorney, if she could not control herself during testimony, then it would be in her best interest to not be present at trial. [Counsel] asked her if she understood counsel's concerns, and Petitioner replied that she thought she very well might have an outburst. [Counsel] testified that "[u]ltimately, the decision was hers to not be there." While [counsel] admitted that it would, in most instances, be better for a defendant to be present during trial so the jury could see the defendant engaged and participating, this was an "atypical" case. [Counsel] did not think there was anything that could assure her that Petitioner would not have an outburst at trial. "I told her it would be better to be with me in court, but an outburst would do so much damage," [counsel] testified. Counsel recalled at the evidentiary hearing that one time when she and her client were reviewing

discovery at the jail prior to trial, her client got very loud and started exclaiming that the statements made by witnesses were lies—that she did not do what they were claiming she did.

At the evidentiary hearing, Petitioner's PCR counsel suggested that [counsel] could have taken other action, besides encouraging her client not to be present, to ensure against any potential outbursts. PCR counsel indicated that had petitioner been properly evaluated by medical professionals before trial, perhaps her post-sentencing diagnosis of schizophrenia could have been made earlier.[3] Petitioner then could have been given medication throughout the trial to diminish the possibility of any outbursts. [Counsel] testified that she did in fact have Petitioner evaluated prior to trial. However, this evaluation was only to determine Petitioner's competency to stand trial. There were no evaluations done to diagnose any other conditions.

Petitioner testified at the evidentiary hearing that she was the one who initially raised the issue of whether she needed to be present at trial or not. Petitioner told [counsel] that she did not want to be there because she does not like to hear other people say bad things about her. Thus, [counsel] suggested to Petitioner that she need not be present, rather than suggesting to her that she take medication to help with her anger management. As previously mentioned, there were only two inquiries made of Petitioner on the record regarding her waiver of appearance. The first was at the *Miranda* hearing on January 22, 2013 and the other was at the beginning of the fifth day of trial, on January 31, 2013. Both times, neither inquiry was extensive nor thorough. Neither informed Petitioner of the importance of the right she was waiving. Judge Vasquez simply asked Petitioner one question: whether she wished to be present in court. Each time, Petitioner replied that she did not and, thus, she was taken back into the holding cell.

DE 8-15 at 13–14.

The court then conducted the following analysis in determining that Walker's waiver of her right to appear at trial was not knowing, voluntary, and intelligent, and her counsel's suggestion that she not appear at trial was unreasonable:

The right to be present at trial may be waived by a defendant's express oral waiver placed on the record. R. 3:16(b).[4] However, the waiver placed on the

---

[3] Walker testified at the PCR hearing that she was given medication as a result of her post-trial schizophrenia diagnosis, but she told the doctor that she "didn't want it." DE 8-35 at 17. Walker further testified that the only medication that she was taking at the time of the hearing was for high blood pressure. *Id.* at 16.

[4] New Jersey Court Rule 3:16(b) provides, in relevant part:

The defendant shall be present at every stage of the trial, including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, unless otherwise provided by

record in the present case cannot be deemed sufficient to satisfy R. 3:16(b); the waiver was not knowingly, voluntarily, and intelligently made so as to constitute an express oral waiver. Unlike the defendant in [*State v. Morton*, 155 N.J. 383 (1998)], Petitioner was not informed of what opportunities at trial she would be depriving herself of by waiving her appearance. In addition, Petitioner was strongly encouraged by her counsel not to be present. Petitioner was told it would be in her best interest not to be in court. At the very least, her waiver was not wholly voluntary. Based on this evidence, the Court concludes that Petitioner did not effectively waive her appearance at trial pursuant to R. 3:16(b). Petitioner has satisfied the first prong of the *Strickland/Fritz/Chronic* standard.

DE 8-15 at 15.

Finally, the PCR court discussed the second prong of *Strickland*, finding that because of the strong evidence against her, Walker failed to establish that counsel's deficient performance prejudiced her:

Even though Petitioner has demonstrated [counsel] was unreasonable in suggesting that she not appear at trial, Petitioner has not proven prejudice. There was very strong evidence against Petitioner in this case, including a video-recorded confession in which she admitted to stabbing Ms. Blunt, the blood of Ms. Blunt on Petitioner's clothing, and Ms. Blunt's personal belongings that were found in Petitioner's home. Despite this overwhelming evidence, [counsel] was still able to secure an acquittal on this first degree felony murder count and on the first degree robbery count. Petitioner now argues that had she appeared at trial, the jury could have believed [counsel's] insistence that this was a passion provocation homicide and not a purposeful murder, leading to a more favorable verdict . . . . There has been no proof suggesting that Petitioner's appearance at trial would have had this desired effect. . . . Petitioner has failed to satisfy the *Strickland/Fritz/Cronic* standard.

DE 8-15 at 15.

In rejecting Walker's argument that the PCR court erred in finding that she was not prejudiced, the Appellate Division set forth the relevant law and analyzed the claim as follows:

---

Rule. Nothing in this Rule, however, shall prevent a defendant from waiving the right to be present at trial. A waiver may be found either from (a) the defendant's express written or oral waiver placed on the record, or (b) the defendant's conduct evidencing a knowing, voluntary, and unjustified absence after (1) the defendant has received actual notice in court or has signed a written acknowledgment of the trial date, or (2) trial has commenced in defendant's presence.

[D]efendant asserts the PCR court erred in finding she was not prejudiced by her absence from the trial, because it denied her the opportunity to communicate with counsel, to assist in her defense, and assist with cross-examination of witnesses.

To prove prejudice, "actual ineffectiveness . . . must [generally] be proved." *Fritz*, 105 N.J. at 52. Petitioner must show the existence of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ibid*. "[N]ot every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding. *Strickland*, 466 U.S. at 693 (citation omitted). Prejudice may be presumed only when "the accused is denied counsel at a critical stage of [her] trial" or "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 659, 667–68 (1984); *see also State v. Savage*, 120 N.J. 594, 639 (1990).

Here, defendant had the benefit of trial counsel during every critical stage of her trial, as counsel was present from just after the indictment through sentencing. There was no showing trial counsel did not "subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 667–68. Trial counsel cross-examined every witness introduced by the state, and made every effort to attempt to show that defendant acted in passion/provocation instead of knowingly or purposefully. There is no presumption of prejudice stemming from counsel's trial performance here.

Nor has defendant made a showing that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Fritz*, 105 N.J. at 52. Though the jury was exposed to defendant at jury selection, and despite the very real danger that defendant would have had a violent outburst in front of the jury, defendant asserts that seeing her at trial would have "humanized" her and made it more likely the jury would find passion/provocation instead of first-degree murder. However, there was substantial evidence against defendant, including her statement, the witness testimony, and the DNA evidence. We note the strategy employed by trial counsel was at least partially successful, as defendant was acquitted of robbery and felony murder.

. . .

In conclusion, the PCR judge made a determination, detailed in a lengthy and thorough written opinion, that defendant was not prejudiced by any error made by trial counsel. Defendant has not made a showing that this determination is "so clearly mistaken that the interest of justice demand intervention and correction." [*State v. Elders*, 192 N.J. 224, 244 (2007)].

*Walker*, 2018 WL 3431709, at *5–6.

Upon review of the record, I find that the state courts reasonably found that Walker has not established prejudice. As the Appellate Division stated and the trial transcripts establish, Walker's counsel "cross-examined every witness introduced by the state, and made every effort to attempt to show that defendant acted in passion/provocation instead of knowingly or purposefully." *Id.* at *5; *see also Scott*, 2010 WL 8128749, at *16 (no finding of prejudice where "[t]he trial transcript establishes trial counsel appropriately objected to prejudicial evidence, asserted valid defenses, conducted effective cross-examination of Commonwealth witnesses, and gave a persuasive closing argument").

Moreover, as noted above, the evidence against Walker was overwhelming. It included her videotaped confession, witness testimony placing her in the vicinity of the crime, DNA evidence demonstrating, *inter alia*, that the victim's blood was on Walker's clothing, and the victim's personal belongings found in Walker's residence. *Walker*, 2018 WL 3431709, at *5; DE 8-15 at 15; *see also Gaines v. Brittain*, No. CV 19-1160, 2021 WL 1124938, at *12 (W.D. Pa. Mar. 23, 2021) ("Under the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard, Petitioner's claim of ineffective assistance of trial counsel does not merit habeas relief. Simply put, the state courts reasonably denied this claim after determining that counsel was not ineffective for failing to object to Detective Sherwood's comment for multiple reasons, not the least of all being that Petitioner could not demonstrate prejudice given the overwhelming evidence of his guilt, which included Petitioner's own confession that he was present at the scene and had a firearm with him and he was captured on surveillance video running from the scene"); *Bodle v. Smith*, No. 3:17-CV-2265, 2021 WL 322171, at *19 (M.D. Pa. Feb. 1, 2021) ("Bodle cannot meet the prejudice prong of the *Strickland* standard given the overwhelming evidence of his guilt presented at trial and based on

his own admissions"). Further, even in the face of this evidence, including that proceeds of the crime were found at Walker's home, Walker's counsel secured an acquittal of the robbery and felony murder charges. *See Scott*, 2010 WL 8128749, at *16. Finally, even Walker herself concedes that "it is difficult to dispute" that "[t]here was not a reasonable probability that, but for counsel's substandard performance, the result of the trial would have been different." DE 8-36 at 11 (Walker's brief to the New Jersey Supreme Court).

On this record, the Appellate Division's determination that Walker failed to establish prejudice under the second prong of *Strickland* is not contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts in light of the evidence presented. *See Strickland*, 466 U.S. at 687. Accordingly, Walker is not entitled to habeas relief on this claim.

**B. Knowing and Intelligent Waiver of Presence at Trial**

**1.    Applicable Law**

"The Due Process Clause and the Confrontation Clause of the Sixth Amendment, as applied to the States via the Fourteenth Amendment, both guarantee to a criminal defendant . . . the 'right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings.'" *Tennessee v. Lane*, 541 U.S. 509, 523 (2004) (quoting *Faretta v. California*, 422 U.S. 806, 819, n.15 (1975)); *see also Kentucky v. Stincer*, 482 U.S. 730, 745 (1987); *U.S. v. Williams*, 591 Fed. App'x 78, 94–95 (3d Cir. 2014). A petitioner can waive this right if the waiver is a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Whether a criminal defendant knowingly and intelligently waived his right to be present at trial "depend[s], in each case, upon the particular facts and circumstances surrounding that

case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 (1938).

The Supreme Court has "adopted the general rule that a constitutional error does not automatically require reversal of a conviction"; the Court "has applied harmless-error analysis to a wide range of errors and has recognized that most constitutional errors can be harmless." *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991) (citing cases). Automatic reversal due to a constitutional error is required only if the error was a "structural defect" that permeated "[t]he entire conduct of the trial from the beginning to end" or "affect[ed] the framework within which the trial proceeds." *Id.* at 309–10. In contrast, if the error was a "trial error," a court conducts a harmless-error review. *Id.* at 307–08. A trial error "occur[s] during the presentation of the case to the jury, and . . . may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Id.* at 307–08. "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." *Rose v Clark*, 478 U.S. 570, 578–79 (1986).

Denial of a defendant's right to be present during all critical stages of the proceedings is generally subject to harmless error review. *See Rushen v. Spain*, 464 U.S. 114, 117–118 & n.2 (1983); *United States v. Toliver*, 330 F.3d 607, 611 (3rd Cir. 2003); *United States v. Alessandrello*, 637 F.2d 131, 138 n. 11 (3rd Cir. 1980) (citing *Chapman v. United States,* 386 U.S. 18, 21–22 (1967)); *see also Campbell v. Rice*, 408 F.3d 1166, 1172 (9th Cir. 2005) ("The Supreme Court has never held that the exclusion of a defendant from a critical stage of his criminal proceedings constitutes a structural error."). For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a

"substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also O'Neal v. McAninch*, 513 U.S. 432, 445 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had "substantial and injurious effect or influence in determining the jury's verdict") (quotations omitted).

### 2. Analysis

#### a. Exhaustion

Walker argues that her "right under the Due Process Clause and Confrontation Clause . . . was violated because her waiver of her right to be present at trial was not knowing and intelligent." DE 4 at 7. As an initial matter, it is questionable whether Walker exhausted this claim. Walker contends that she exhausted because "the body of the legal argument in the State Supreme Court filing mentions both ineffective assistance of counsel at trial and a due process argument 'under the State and Federal Constitutions'" and "Petitioner cited both New Jersey and U.S. Supreme Court cases in her legal argument." DE 4-1 at 4. The State responds that this claim is unexhausted because Walker "did not raise a Confrontation Clause claim in any state court proceeding, and raised the Due Process claim for the first time in her petition for certification to the New Jersey Supreme Court." DE 8 at 28, 41.

Arguably, Walker did not present the waiver claim to the New Jersey Supreme Court. Her question presented reads: "Did the defendant receive constitutionally ineffective assistance from trial counsel because of waiving appearance at trial, thus meaning that defendant did not make a knowing and intelligent waiver of her right to appear?" DE 8-36 at 5. She did not reference the Due Process Clause until the body of her brief. There, she appears to be arguing that the state courts erred in not considering her rights under the Due Process Clause when

analyzing her right to effective assistance of counsel. *Id.* at 11. It is not until the last sentence of

the argument section of her brief that Walker appears to request that the court review the validity

of her waiver independently of the ineffective assistance of counsel claim. *Id.* at 12. Walker's

substantive argument on appeal to the New Jersey Supreme Court reads:

> Ultimately, Judge Leath found that although trial counsel's incomplete advice
> rendered counsel's assistance ineffective, defendant could not meet the second
> prong of the [Strickland] test of showing prejudice from counsel's substandard
> performance. There was not a reasonable probability that, but for counsel's poor
> performance, the result of the trial would have been different. It is difficult to
> dispute this, but another subject must be discussed.
>
> Neither Judge Leath nor defendant's appellate counsel raised or considered *this
> claim* under the Due Process Clauses of the State and Federal Constitutions
> regarding failure of the trial court to adequately question defendant or make a
> daily determination if whether defendant's waiver of her right to attend trial was
> knowing and intelligent each day. In other words, the court had a duty to ascertain
> each day whether defendant was making a knowing and intelligent decision to
> waive appearance at trial. Judge Leath found that the court did not. *Irrespective of
> the claim of ineffective assistance of counsel*, the trial court's duty to make its
> own determination as to the knowing and voluntary waiver of the important right
> to attend trial was not fulfilled in this case and this violated petitioner's rights
> under the New Jersey and U.S. Constitutions to due process and a fair trial.

DE 8-36 at 11–12 (emphasis supplied).

Even if Walker presented the waiver claim independent of the ineffective assistance of

counsel claim to the state's highest court, she still arguably did not exhaust, because she did not

present that claim to the Law Division and Appellate Division. *See Castille v. Peoples*, 489 U.S.

346, 351 (1989) (presenting a claim for the first time to the state's highest court on discretionary

review does not satisfy the exhaustion requirement). However, in addressing Walker's

ineffective assistance claim, the state courts already analyzed the sufficiency of Walker's waiver

and any resulting prejudice pursuant to the same standards that apply to an independent claim of

insufficient waiver. First, the state court determined that the waiver was insufficient because

Walker had not been advised of the consequences of waiving her right to appear. *See* DE 8-15 at

27

15 ("Petitioner was not informed of what opportunities at trial she would be depriving herself of by waiving her appearance."). An independent waiver claim would require the court to make the same determination. *See Brady*, 397 U.S. at 748 (1970) (waiver of a constitutional right must be voluntary, knowing, and intelligent and "done with sufficient awareness of the relevant circumstances and likely consequences"). Second, the state court analyzed prejudice under the second prong of *Strickland*. Under an independent waiver claim, the court would have analyzed prejudice pursuant to the *Brecht* harmless error standard. *Rushen*, 464 U.S. at 117–118 & n.2. For these purposes, the *Strickland* and *Brecht* standards are "essentially the same." *Breakiron v. Horn*, 642 F.3d 126, 147 n.18 (3d Cir. 2011) (citation omitted).

It follows, then, that the claim arguably *is* exhausted, but the exhaustion issue is largely academic because, as explained above, the state court analyzed whether the waiver was sufficient and, if not, whether prejudice resulted. There is nothing more for the state courts to consider in connection with the waiver claim.

Nevertheless, I need not definitively determine whether Walker exhausted this claim because it must be denied on the merits. *See* 28 U.S.C. § 2254(b)(2). Given that the state courts have already addressed the issues of waiver and prejudice, and that even Walker acknowledges the lack of prejudice from the invalid waiver is "difficult to dispute," I find the interests of comity, federalism, and judicial efficiency will be better served by proceeding to the merits. To be clear, whether I defer to the state courts' determination or analyze this claim independently, the result is the same. Walker has failed to establish prejudice; thus, she is not entitled to habeas relief on this claim.

b.     Merits

As explained in Section III.D., when the state courts have not reached the merits of a claim presented to a federal court, the federal court must "conduct a de novo review over pure legal questions and mixed questions of law and facts . . . ." *Taylor*, 504 F.3d at 429. But even on de novo review, the state court's factual determinations are still presumed to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. *Appel*, 250 F.3d at 210 (citing 28 U.S.C. § 2254(e)(1)).

Here, after conducting a hearing, reviewing the trial record, and making credibility determinations, the PCR judge found (1) it was not apparent that counsel informed Walker of the risks of not being present at trial, (2) the trial judge only twice asked Walker about her desire not to be present, and (3) the trial judge failed to question Walker about her understanding of the nature and consequences of her absence. *Walker*, 2018 WL 3431709, at *3. On this basis, the PCR court held that the record did not support a finding that Walker knowingly and intelligently waived her right to be present at trial. *Id.* This determination, which is favorable to Walker's claim, was not contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts in light of the evidence presented.

Likewise, an independent review of the record and deference to the state court's factual findings would support my own independent finding that Walker did not validly waive her right to be present. Walker testified she was not advised of the consequences of not appearing at trial (DE 8-35 at 10–12, 14); Walker's counsel testified that she could not recall the specific information she imparted to Walker regarding the consequences of not appearing at trial (*id.* at 64–65, 67–69); and the trial transcript reflects that the court did not advise Walker of the consequences of appearing at trial (DE 8-24 at 6; DE 8-30 at 4). As the record reflects that

Walker's decision to not be present at trial was not made with awareness of the likely consequences of that choice, her waiver was not valid under federal law. *See Brady,* 397 U.S. at 748.

Nevertheless, the harmless-error doctrine precludes relief. Walker has not shown that the invalid waiver had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637; *see Centeno v. Davis*, No. 16-2779, 2022 WL 865816, at *22 (D.N.J. Mar. 23, 2022) ("Here, the state court did not address the Confrontation Clause claim, and this Court will apply the *Brecht* harmless-error doctrine de novo."). Indeed, the opposite is surely the case.

First, the evidence of guilt—including the confession (DE 8-23 ("I stabbed her in the chest")), witness testimony placing Walker at the scene of the crime, DNA evidence, and the proceeds of the theft found in Walker's home—was extensive and convincing. *See also Walker*, 2018 WL 3431709, at *5; DE 8-15 at 15. It established that, "during an argument over $40, defendant stabbed an eighty-eight-year-old woman eleven times in her chest with a kitchen knife, piercing her heart, lung, and aorta and breaking two ribs. The victim also suffered wounds to her neck and ears, possibly inflicted by a different knife, as well as repeated blunt trauma to her face causing multiple fractures." *Walker*, 2014 WL 7912870, at *6. Second, the trial judge addressed Walker's absence in (a) a jury voir dire questionnaire, aimed at weeding out any jurors who would view her negatively for exercising her right not to be present (DE 8-25 at 44 ("[T]he defendant does not have the burden to testify or present any evidence. The defendant also has the right not to be present during the trial, if she so chooses. In this case, the defendant may choose not to be present in the courtroom for some or all of the testimony. Please explain how you would feel about that.")), and (b) in the final charge to the jury (DE 8-31 at 17 ("You must not

consider for any purpose or in any manner in arriving at your verdict the fact that the defendant did not testify. That fact should not enter your deliberations or discussions in any manner, at any time. . . . [A]nd the same goes, uh, for the times she was not present . . . defendant is entitled to have the jury consider all evidence presented at trial. She is presumed innocent whether or not she chooses to testify."). Third, Walker's counsel mounted a defense through cross examination of every state witness and argued, in opening and closing, that Walker did not go to Blunt's house with the intent to rob and kill her and that the crime was one of passion/provocation. As the Appellate Division noted, this strategy was partially successful in that the jury acquitted Walker of first degree felony murder and robbery charges. *Walker*, 2018 WL 3431709, at \*5. Thus, Walker benefitted from her counsel's advocacy. Fourth, Walker was present for some of the proceedings, indicating to the jury that she was not a fugitive. (DE 8-35 at 53–54 (trial counsel testified at the PCR hearing that she advised Walker to be present during voir dire because: "I wanted the jury to see her. I wanted them to know that she was not a fugitive and that they could see her sitting there during jury selection and that she would come back again for the jury charge.").

On this record—and particularly in light of the powerful evidence of Walker's guilt—I am not left with "grave doubt" about whether Walker's absence had "a substantial and injurious effect or influence in determining the jury's verdict." *O'Neal*, 513 U.S. at 445. Indeed, I must find that it did not. Any error resulting from Walker's invalid waiver of her presence at trial is surely harmless. *See United States v. Lane*, 474 U.S. 438, 450 (1986) ("In the face of overwhelming evidence of guilt shown here, we are satisfied that the claimed error was harmless."); *Ortiz-Santiago v. Stickmen*, No. 03-2144, 2004 WL 1119930, at \*11 (E.D. Pa. May 19, 2004) ("Based on the overwhelming evidence of petitioner's guilt—that he broke into the

victim's house through the second floor window, carrying several knives, and stabbed the victim 23 times—the investigator's passing reference to his post-arrest silence cannot have had a substantial effect on the jury's verdict.") (citations omitted); *Buie v. Rivard*, No. 14-11100, 2016 WL 2866401, at *13 (E.D. Mich. May 17, 2016) (where during jury voir dire petitioner asked to be excused from the courtroom when he became frustrated with the proceedings, and state appellate court found that he did not knowingly and voluntarily waive his right to be present, district court held habeas relief was not warranted: "Petitioner fails to establish that he was prejudiced by his absence from the courtroom . . . . Defense counsel was present to protect his interests and he fails to show that his presence would have affected the jury voir dire. Additionally, given the significant evidence of guilt presented at trial, particularly the DNA evidence, it cannot be said that Petitioner's absence . . . had a substantial effect or influence on the jury's verdict.").[5] Accordingly, Walker is not entitled to habeas relief on this claim.

---

[5] *See also, e.g.*, *Beard v. Davis*, 584 F. App'x 856, 856–57 (9th Cir. 2014) ("Even if Beard were to show that the trial judge violated the Confrontation Clause, this claim fails under the harmless error standard. Because the judge allowed substantial cross-examination of the cooperating witness, and because there was strong evidence of Beard's guilt independent of that witness's testimony, any error did not have a 'substantial and injurious effect or influence in determining the jury's verdict.'"); *Casanova v. Campbell*, No. 20-10413, 2022 WL 992944, at *14 (E.D. Mich. Mar. 31, 2022) ("In light of this extensive evidence of guilt, petitioner is unable to show that the admission of his statements [taken in violation of *Miranda*] had a substantial or injurious effect or influence on the jury verdict"); *Johnson v. Dixon*, No. 21-20043, 2022 WL 2104132, at *7 (S.D. Fla. June 10, 2022) ("More to the point, the Court fully agrees with the state postconviction court that—if any error did occur—it was utterly harmless in light of the overwhelming evidence of Petitioner's guilt."); *Williams v. Fox*, No. 18-04859, 2020 WL 1667534, at *18 (N.D. Cal. Apr. 2, 2020) ("Considering this strong evidence of Petitioner's guilt, any error in admitting the victim's out-of-court statements would have been harmless") (quotations omitted); *Ross v. New York*, No. 18-CV-7219(JS), 2019 WL 3753715, at *14 (E.D.N.Y. Aug. 8, 2019) ("the overwhelming evidence of Petitioner's guilt . . . renders the trial court's decision to preclude Sawyer's testimony harmless error under *Brecht*"); *George v. Hoffner*, No. 15- 14057, 2018 WL 1744795, at *8 (E.D. Mich. Apr. 11, 2018) ("In light of the overwhelming evidence of guilt, the admission of petitioner's confession did not have a substantial or injurious influence or effect on the verdict."); *Powers v. Davey*, No. 10-0365, 2016 WL 234381, at *14 (N.D. Cal. Jan. 20, 2016) ("There was strong evidence of Petitioner's guilt: Petitioner was implicated by a former cellmate . . . . who testified at trial that Petitioner admitted

V.      **CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Here, reasonable jurists would not find the Court's habeas ruling debatable. Accordingly, no certificate of appealability shall issue.

VI.     **CONCLUSION**

For the foregoing reasons, Walker's petition is denied and no certificate of appealability shall issue.  An appropriate order follows.

DATED:  December 19, 2022

/s/ Kevin McNulty

_____
KEVIN MCNULTY
United States District Judge

---

to the murder; the victim's DNA was in blood taken from gloves found in Freeland's room (where Petitioner's clothing was also found); and the victim's watch was found on Petitioner when he was arrested. Thus, it cannot be said that the admission of Petitioner's statements to police had a substantial or injurious effect on the verdict."); *Sorrentino v. Lavalley*, No. 12-7668, 2016 WL 3460418, at *3 (S.D.N.Y. June 21, 2016) ("In light of the overwhelming evidence of Petitioner's guilt, any evidentiary error that might have resulted from the introduction of Prieto's hearsay statements did not deprive Petitioner of a fair trial").